In the Matter of Michael Joseph
**FITZPATRICK and Sandra Sue
Fitzpatrick, Debtors.**

**Thomas WILLIAMS, Trustee in
Bankruptcy, Plaintiff,**

v.

**KIDDER SKIS
INTERNATIONAL, Defendant.**

**Bankruptcy No. 85–00104–SW.
Adv. No. 85–0230–SW.**

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Sept. 11, 1985.

Thomas L. Williams, Roberts, Fleischaker & Scott, Joplin, Mo., for plaintiff.

Robert R. Parrish, Joplin, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SUM OF $8,900 PLUS INTEREST FROM THE DEFENDANT

DENNIS J. STEWART, Chief Judge.

The plaintiff trustee in bankruptcy seeks to recover from the defendant the equivalent in value of certain ski shop inventory which was transferred to defendant by the debtor on the 91st and 92d days next preceding the date of bankruptcy. It is the plaintiff's contention that the transfer was one made by the debtor with actual intent to hinder, delay, and defraud creditors within the meaning of § 548(a)(1) of the Bankruptcy Code. The merits of the issues joined by the pleadings came on before the bankruptcy court for hearing in Joplin, Missouri, on August 16, 1985, whereupon the plaintiff appeared personally and as his own counsel and the defendant appeared by counsel, Robert Parrish, Esquire. The evidence which was then adduced demonstrated that, on or about October 12, 1984, when the debtor was admittedly insolvent he returned the ski shop inventory here in issue to the defendant, from whom he had obtained possession in an agreement to pay for them; that the debtors' petition for voluntary bankruptcy was filed less than a year later, on January 14, 1985; that the defendant applied the value of the inventory repossessed against an outstanding indebtedness owed to the defendant of about $8,900; that the distress of the debtor was at least partially known by the defendant at the time of the transfer and it was accordingly agreed between the defendant and the debtor that inventory which was contended to be of less value than the outstanding debt would nevertheless be accepted as full payment therefor; that the defendant had no security or other ownership interest in the property transferred, but rather another creditor, the Community Bank of Shell Knob, has a valid and perfected security interest in the same collateral; that the defendant later resold the retaken inventory to another retailer for the sum of $3,200; that, at or about the same time as the challenged transfer, the debtor transferred $5,000 in value to his father and disposed of another sum of $7,000 in a manner which was not reported by the debtor in his bankruptcy schedules;[1] that the debtor signed his bankruptcy petition and schedules on December 16, 1984, a date well within the 90–day period next following the date of transfer; that the same petition and schedules were not filed with the court until 91 days following the date of the challenged transfer; that the debtor contends that he did not know as of the date of the transfer that the inventory transferred was subject to the security interest of the Community Bank of Shell Knob but rather believed that it "still belonged to Kidder" because he had not paid for it; and that the debtor reported the fact of this transfer in his statement of affairs filed with the bankruptcy court at the inception of these title 11 proceedings.[2]

*Conclusions of Law*

Section 548(a) of the Bankruptcy Code, which is relied on by the plaintiff trustee,[3] provides as follows:

"The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor ... made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which he debtor was or

---

1. Evidence to this effect was uncontradicted in the hearing of the merits of this action and was in fact testimonially admitted by the debtor Michael Joseph Fitzpatrick.

2. It was apparently believed by the debtor that the transfer, by reason of the delayed filing, was not recoverable as a preference. The applicability of section 548(a)(2) of the Bankruptcy Code was apparently overlooked.

3. Somewhat vaguely, the trustee's complaint simply alleges that "[t]his is an action to avoid a fraudulent transfer within the meaning of 11 U.S.C. § 548." But it was made clear at the hearing of the merits that the species of fraudulent transfer attempting to be proved was that with actual intent to hinder, delay, and defraud creditors within the meaning of § 548(a)(1).

became, on or after the date that such transfer occurred ..., indebted...."

As observed above, the debtor denies any actual intent to hinder, delay, or defraud his creditors. But proof of a fraudulent intention seldom can be made directly. Rather, it must ordinarily be accomplished by circumstantial evidence. This court has recently, in *Matter of Hoy*, 75 B.R. 256, (Bkrtcy.W.D.Mo.1985), had reason to analyze the type and weight of evidence which suffices circumstantially to evidence a fraudulent intention. That analysis was as follows:

" 'It is well established ... that the element of intention is seldom provable by direct judicial admission of the defendant and ordinarily must be shown by circumstantial evidence.' *Matter of Curl* [49 B.R. 302] In proceedings for straight liquidation under chapter 7 of the Bankruptcy Code No. 84–00412–SJ (Bkrtcy.W. D.Mo.1985). 'Fraud, being difficult to establish by direct proof, may also be shown by circumstantial evidence.' *Barnard v. Barnard*, 568 S.W.2d 567, 570 (Mo.App.1978). 'It has always been held that fraud may be proven by circumstantial evidence, if that evidence affords a clear inference of fraud, and amounts to more than a mere suspicion or conjecture.' *Herrold v. Hart*, 290 S.W.2d 49, 55 (Mo.1956). 'While it is undoubtedly true as a general legal proposition that "fraud is not to be presumed, but must be proven by the party alleging it," yet it is equally true that fraud is seldom capable of direct proof, but for the most part has to be established by a number and variety of circumstances, which, although apparently trivial and unimportant, when considered singly, afford, when combined together, the most irrefragable and convincing proof of a fraudulent design.' *Allison v. Mildred*, 307 S.W.2d 447, 453 (Mo.1957). 'There are a number of indicia or badges of fraud and, although usually none by itself establishes fraud, a strong inference of fraud arises from a concurrence of several badges of fraud; such as: a conveyance in anticipation of suit; a conveyance to near relative; inadequacy of consideration; unusual clauses in instruments or unusual methods of transacting business; transfer of all or nearly all the debtors' property; insolvency; retention of possession by the debtor; the failure to produce available explanatory or rebutting evidence when the circumstances attending the transaction are suspicious.' *Id* at 454."

In this case, as in the *Hoy* case, the evidence demonstrates a confluence of several badges of fraud. The debtor was admittedly insolvent at the time of the transfer. The financial distress of the debtor was in fact so advanced that the transfer must be deemed to have been in "anticipation of suit" or bankruptcy or other insolvency proceedings.[4] The transfer was to an entity with which the debtor had a closer financial relationship than with other creditors.[5] The transfer was of property which the debtor either knew or should have known he had no right to transfer.[6] And the delaying of the filing of the bankruptcy petition until passage of the preference period warrants an inference, when there is no contrary explanation, that delay was for the purpose of preserving the transfer against any claim of preference. In the words of the authorities quoted above, this unusual method of doing business which is not otherwise explained constitutes indicia of fraud. Finally, the petition and schedules demonstrate that the transfer, either alone or in conjunction with other transfers, was of virtually all the debtor's prop-

---

**4.** The attempt to dispose of as much property as possible, further, is evidenced by other transfers of liquid property, some to near relatives.

**5.** Evidence of the former status of the creditor over the Community Bank of Shell Knob is readily apparent from the facts of this action. The trustee alleged that there was a tacit credit arrangement of the debtor with the defendant, an allegation not contradicted by the defendant.

**6.** There is no evidence in this case to contradict the clear and unequivocal claim of the Community Bank of Shell Knob of a valid security interest in the property.

erty.[7] There can be little doubt on the basis of these facts that the court should consider the transfer as one which is within the condemnatory language of § 548(a), *supra.*

■ In its posttrial argument, the defendant asserted the defense of § 548(c), claiming that it had shown, in the course of the trial of this action, that it had given full value for the transfer in "good faith," within the meaning of that section. But the fact that Kidder knew or should have known of the debtor's financial distress evidenced by the known[8] inability to pay for the inventory, is sufficient to dispel any finding of "good faith" within the meaning of that section. See 4 Collier on Bankruptcy ¶ 548.07, pp. 548–63, 548–67 (15th ed. 1985), to the following effect:

> "Knowledge of the transferor's insolvency may, in conjunction with other factors, disable the transferee from asserting good faith. Indeed, the presence of any circumstance placing the transferee on inquiry as to the financial condition of the transferor may be a contributing factor in depriving the former of any claim to good faith unless investigation actually disclosed no reason to suspect financial embarrassment."

Accordingly, this court finds the "good faith" defense to be without merit.

■ The court must finally determine whether the transferred property should be turned over to the trustee in specie or whether a judgment should be issued for its equivalent in value. See § 550(a) of the Bankruptcy Code. The defendant no longer has the property in specie, having sold it. Under such circumstances, it is the court's duty to render judgment for its equivalent value.[9] The only certain proof in the evidence as to that value is the admission of Kidder that its value was at least $8,900 by the act of giving credit to such an extent for it or its return. The evidence of the wholesale resale value ($3,200) to another retailer cannot be as indicative of fair market value as the price for which the debtor was willing to part for it and the defendant willing to give for it.[10] Judgment must accordingly be rendered for the plaintiff trustee and against the defendant in the sum of $8,900 plus interest from the date of transfer.[11]

The defendant, in oral argument on the date of the hearing of the merits, implied that the contest was really one between the two creditors, itself and the Community Bank of Shell Knob Missouri under the state laws determining priority of interest in property. But, under § 541 of the Bankruptcy Code, despite some waffling on the issue by our district court,[12] even property fully subject to a creditor's security interest is deemed to be property of the estate recoverable by trustee.

Accordingly, it is hereby

ORDERED AND ADJUDGED that plaintiff have and recover from defendant the sum of $8,900 plus interest at the legal rate from the date of transfer.

---

7. See note 4, *supra.*

8. That defendant knew of the debtor's inability to pay for the transferred inventory is admitted.

9. "Certainly if conversion of the property results in a diminution in value of the property, the court should permit the trustee to recover the value of the property rather than the depleted property." 4 Collier on Bankruptcy ¶ 550.02, p. 550–4, n. 6 (15th ed. 1985).

10. Cf. note 9, *supra.*

11. "[T]he bankruptcy court should exercise its equitable powers to award the trustee interest and costs when appropriate." 4 Collier on Bankruptcy ¶ 550.02, p. 550–4 (15th ed. 1985).

12. Compare *In re Lovett,* 11 B.R. 123 (W.D.Mo. 1981), with *Matter of Hamilton,* Civil Action No. 83–6070–CV–Sj (W.D.Mo. May 16, 1984), which is attempted to be explicated in *Matter of Transport Clearings-Midwest,* 41 B.R. 528, 539, n. 31 (Bkrtcy.W.D.Mo.1984).