**In re Carl Courter MUNDEN, Bankrupt.**

**CHIPPENHAM HOSPITAL, INC., Plaintiff,**

**v.**

**Carl Courter MUNDEN, Defendant.**

**Bankruptcy No. 79–00574.**

United States Bankruptcy Court, E. D. Virginia.

Jan. 6, 1981.

(Munden), fraudulently conveyed property he owned with his wife as tenants by the entirety to his sons, Donald E. Munden and Carl Randolph Munden. The Bankrupt timely filed an Answer to the Complaint generally denying the allegations in said Complaint. After trial, briefs were requested and received by the Court. Upon the foregoing, the Court renders the following opinion.

## STATEMENT OF THE FACTS

On April 30, 1979, Carl C. Munden filed his Petition in Bankruptcy. In his petition Munden listed Chippenham Hospital, Inc. as an unsecured creditor in the amount of $7,722.50. This debt was incurred for services rendered to Lena G. Munden, his wife, while she was a patient at Chippenham Hospital from April 2, 1978 to April 30, 1978.

On February 1, 1979, Chippenham Hospital filed suit in Chesterfield Circuit Court against Carl C. Munden and Lena G. Munden in the amount of $7,722.50 for charges incurred by Lena G. Munden at Chippenham Hospital. On April 30, 1979, the date he filed his petition herein, Munden was dismissed without prejudice as a party to the suit filed by Chippenham Hospital. Summary judgment was entered against Lena G. Munden in favor of Chippenham Hospital in the amount of $7,722.50.

By deed dated March 21, 1977, Carl C. Munden and Lena G. Munden conveyed to their sons, Donald Lee Munden and Carl Randolph Munden, property in Chesterfield County, Virginia, known as 3000 Freedom Lane, Richmond, Virginia. The deed was recorded in the Clerk's Office of the Circuit Court of Chesterfield County, Virginia, on January 22, 1979. Chippenham Hospital first learned of the transfer of the property on September 13, 1979.

At trial the following exhibits were offered into evidence: the deed between Carl Munden and Lena G. Munden, his wife, to Donald Lee Munden and Carl Randolph Munden; the official receipt from the recordation of the deed showing the recordation date of January 22, 1979, in the Clerk's Office of the Circuit Court of Chesterfield

David C. Martin, Tyler, Morton, Williams, Martin & Cawthorn, Richmond, Va., for plaintiff.

Hudson Branham, Richmond, Va., for defendant/bankrupt.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, District Judge.

This matter comes on upon the filing of a Complaint for Revocation of Discharge by Chippenham Hospital, Inc., by counsel, alleging that the Bankrupt, Carl C. Munden

County, Virginia; and interrogatories answered by the Bankrupt. The interrogatories revealed that the consideration for the transfer of the property was the contribution of the sons to the living expenses of Carl C. Munden and Lena G. Munden; that the only outstanding lien against the real estate was satisfied May 2, 1977; that Carl Munden and his wife have continuously resided on the property since March 27, 1977; that Donald Lee Munden has lived on the property periodically from March 27, 1977 to September of 1979; that neither Carl Munden nor his wife have paid any rent to their sons for the occupation of the property; and that Donald Lee Munden had been in possession of the deed from March 21, 1977, the date of the deed, to January 22, 1979, the date of its recordation.

Charlotte Thacker, a deputy clerk for the Circuit Court of Chesterfield County, Virginia testified that she accepted for recording the deed and that no grantor's tax was paid for the transfer. She further testified that if no grantor's tax was paid, it indicated that no consideration had passed between the parties to the deed.

Upon the conclusion of Plaintiff's evidence, the Bankrupt moved to strike the evidence. The Court considered the motion as one for dismissal and took this motion under advisement. The Bankrupt chose not to present any evidence on his behalf.

## CONCLUSIONS OF LAW

Chippenham Hospital contends that the transfer of the property from the Bankrupt to his sons within one year of his filing of his Petition in Bankruptcy and his failure to disclose the property on his petition or on any of his schedules attached to his petition is fraudulent and requires a revocation of the Bankrupt's discharge pursuant to § 15 of the Bankruptcy Act of 1898, as amended, (11 U.S.C. § 33). Section 15 reads in pertinent part as follows:

"The court may revoke a discharge upon the application of a creditor, the trustee, the United States attorney, or any other party in interest, who has not been guilty of laches, filed at any time within one year after a discharge has been granted, if it shall appear (1) that the discharge

was obtained through the fraud of the bankrupt, that the knowledge of the fraud has come to the applicant since the discharge was granted, and that the facts did not warrant the discharge...."

Chippenham Hospital's contention that the Bankrupt fraudulently failed to disclose the transfer of the property from the Bankrupt to his sons on his petition or schedules attached to his petition is without merit. There had been a delivery of the deed on March 21, 1977, and as between the parties, title was transferred by that act. Recordation is only necessary as to bona fide purchasers and lien creditors without notice under Commonwealth of Virginia recording statutes. Va.Code Ann. § 55–96 (1980 Cum.Supp.); *Hunton v. Wood,* 101 Va. 54, 43 S.E. 186 (1903). Although the deed was not recorded until January 22, 1979, which was within one year of Munden's filing of his Petition in Bankruptcy, for the purpose of determining and listing property of the Debtor on his petition and schedules, the transfer of the property took place on March 21, 1977, when the deed was delivered to his sons. Additionally, there is no evidence that the Bankrupt was aware that the deed had not been duly recorded. Section 7(a)(8) of the Bankruptcy Act of 1898, as amended, (11 U.S.C. § 25) requires the Bankrupt to prepare and file in the Court a schedule of his property, the location and its value. Bankruptcy Rule 108(a) is to the same effect. Having delivered the deed to his son in 1977, the property in question was not property of the Bankrupt within the year of the filing of the petition, therefore, it did not need to be and should not have been listed on the Bankrupt's statement of affairs and schedules. There was no fraud in the exclusion of this property.

As to Chippenham Hospital's contention that the Bankrupt obtained his discharge through fraud in the transfer of the property from him and his wife to his sons, it relies on § 67(d)(2) which states:

"... Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent

(a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; . . . ." 11 U.S.C. § 107

█ For the purpose of § 67(d)(2)(a), the Act provides that a transfer shall be deemed to have been made at the time when it became so far perfected that no bona fide purchaser from the bankrupt could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein. Section 67(d)(5). For the purpose of this avoiding power, the transfer from the Bankrupt to his sons became perfected upon the recordation of the deed on January 22, 1979, well within the year prior to filing of the Petition in Bankruptcy. Conceding that Chippenham Hospital was a creditor at the time of the transfer as established by § 67(d) and assuming that the transfer whenever it took place was without adequate consideration, the reasoning of Chippenham Hospital is faulty for § 67 relates to the avoiding powers of the trustee or creditors. The time of transfer established by § 67(d) is solely for the purpose of seeking avoidance of this transfer. This section is not for the purpose of establishing the presumption of fraud required by § 15.

█ Even if § 67 did apply, there is no evidence of the solvency or insolvency of the Bankrupt at the time of transfer. The failure of Chippenham Hospital to prove this essential element would also make fatal its Complaint. See *Gilmer v. Woodson*, 332 F.2d 541, 546 (4th Cir. 1964); *In re Montgomery*, 3 CBC 97, 101 (W.D.Va.1974).

"If the two conditions are present, *viz.*, lack of fair consideration and insolvency, or resulting insolvency, there is a conclusive presumption of fraud, any intent to the contrary notwithstanding. Absence of either of the specified conditions is, on the other hand, fatal to the presumption." 4 *Collier on Bankruptcy* ¶ 67.34, pp. 518–19 (14th ed.) (footnotes omitted)

█ Even if evidence did exist that the transfer would have made the Bankrupt insolvent, this Court fails to discern any evidence that would reach the degree of fraudulent conduct that would require it to deny or revoke the discharge. The execution and delivery of the deed preceded the Petition in Bankruptcy by 25 months. The expiration of such a long period of time strongly negates any fraudulent intent.