In the Matter of John Norman TITUS and Helen Lucille Titus, Debtors.

In the Matter of Doris Jean HOY and Max Hoy, Jr., Debtors.

**FARMERS AND MERCHANTS BANK, Plaintiff**

v.

**John Norman TITUS and Helen Lucille Titus, Defendants.**

**FARMERS AND MERCHANTS BANK, Plaintiff**

v.

**Doris Jean HOY and Max Hoy, Jr., Defendants.**

Bankruptcy Nos. 84–02244–S, 84–01747–S.

Adv. Nos. 84–0362–SJ, 84–0360–SJ.

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

June 13, 1985.

Donald Reynolds, Rock Port, Mo., for Farmers and Merchants Bank.

Jefferson Broady, Rock Port, Mo., for Titus.

Maureen A. Powers, St. Joseph, Mo., for Hoy.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE AND JUDGMENT DENYING THE DISCHARGES IN BANKRUPTCY OF THE DEFENDANTS TITUS AND HOY

DENNIS J. STEWART, Bankruptcy Judge.

In *Farmers and Merchants Bank v. John N. Titus and Helen L. Titus,* Adversary Action No. 84–0362–SJ, the complaint for denial of discharge was filed on August 16, 1984, and contained the following material allegations:

"... within one year before the date of filing of the petition herein, Defendants executed and delivered to Merle Keith, and thereby transferred to him the following described real property, to wit:

The SW¼ of the SW¼ of section 19, township 66, Range 35, Nodaway County, Missouri.

"Defendants made the transfer of that property with the intent to hinder, delay and defraud the creditors of the estate herein.... The discharge of the Defendants should be denied under Section 727(a)(2) (of the Bankruptcy Code)."

The defendants stated in their answer that "they did not have interest to the said land; rather, the title to the said land was in default (and) lienholder executed his or their rights therein and they had no interest in the said property."

In *Farmers and Merchants Bank v. Doris Jean Hoy and Max Hoy, Jr.,* Adversary Action No. 84–0360–SJ, the complaint for denial of discharge was filed on August 15, 1984, and materially alleged that:

"within one year of the date of the filing of a petition herein, Defendants executed and delivered to Lester M. Keith and Violet M. Keith, and thereby transferred

to them the following described property, to wit:

The NE¼ of the SW¼ and the W½ of the SW¼ of Section 6, Township 66, Range 35, and the N½ of the SE¼ of Section 1, Township 66, Range 36, containing 187.5 acres, more or less, all in Nodaway County, Missouri.

"Defendants made the transfer of the aforesaid property with the intent to hinder, delay and defraud their creditors ... The discharge of Defendants should be denied under Section 727(a)(2)."

The defendants contended in their answer to the complaint that the "conveyance complained of (was) to avoid legal action by the holder of the deed of trust or foreclosure proceedings to be filed against the debtors."

On the issues thus joined by the pleadings, the actions came on before the bankruptcy court for hearing of their merits in St. Joseph, Missouri, on March 12, 1985. The plaintiff appeared by counsel, Donald Reynolds, Esquire, and the defendants also appeared by counsel, Jefferson G. Broady, Esquire. The evidence which was then adduced clearly demonstrated the existence of the following relevant and material facts.

The defendants Titus were debtors of the plaintiff, having received advances of some $43,900 on a $44,500 line of credit. According to a financial statement which they rendered to the plaintiff bank on or about December 16, 1982, the Tituses owned some 40 acres of land which was then valued at $24,000. The legal description of that 40 acres is the same as that above quoted from the complaint. According to the same financial statement of December 16, 1982, Merle Keith then had a first mortgage on this land, with a balance due of $4,000. A second mortgage was held by the defendants Hoy in the sum of $6,000. On October 13, 1983, the plaintiff commenced a civil action in the Circuit Court of Nodaway County, Case No. CV–783–187CC, for the sum of $47,225.99, alleged to be due on the notes issued by the defendants. Thereafter, on October 26, 1983, the defendants Titus executed a "quit claim

deed" purporting to transfer their interest in the 40 acres identified above to Merle Keith and Violet M. Keith. The deed was recorded in the office of the Recorder of Deeds for Nodaway County, Missouri, in Book 374 at page 208. The uncontradicted evidence is to the effect that, at the time of the transfer, the defendants Titus knew of the filing of the state court action [1]; that the value of the transferred property was still in the vicinity of $24,000 [2]; that the defendants were then insolvent [3]; that no consideration other than the release of the $4,000 lien was granted; and that the transfer was made within the year next preceding the date of bankruptcy, July 16, 1984. Additionally, according to admissions made by the Tituses in the meeting of creditors held in their bankruptcy case, their grandson, Johnny Max Titus, who is under the age of 18 years, farmed the land in 1984 and they stated that they helped him do so.

Similarly, the defendants Hoy were also debtors of the plaintiff bank throughout the year next preceding their bankruptcy and antecedent thereto. According to a financial statement rendered to the plaintiff by the Hoys on February 5, 1981, they owned the 168 acres more particularly described in the above quotation from the complaint and a second tract of 348 acres. They valued the former tract at $45,500 and stated that Lester Keith had a mortgage on the property on which the sum of $2500 was due to be paid over the next 12 months. The available documentary evidence shows that, with respect to this property, the defendants Hoy had entered into a "real estate contract" on March 8, 1976, with Lester M. Keith and Violet M. Keith,

under which the defendants agreed to pay a total purchase price of $75,000—$13,000 down and the balance by periodic payments between March 1, 1977, and March 1, 1986, in the sum of $2500 annually and a balance of $54,000 on the latter date. In the meantime, on May 25, 1982, the Hoys gave a deed of trust on the property to the plaintiff bank to secure a promissory note in the sum of $81,500.00. This followed their rendering a financial statement to the plaintiff on January 29, 1982, in which the 168 acres, then valued at $43,000, was listed as an asset mortgaged to the Keiths on which "$2500 plus interest" was the "amount due in 12 months." On October 17, 1983, the plaintiff filed a civil action in the Circuit Court of Nodaway County, Missouri, *Farmers and Merchants Bank v. Hoy*, Case No. CV–783–188CC, for the sum of $88,716.59 which was alleged to be due on the aforementioned note. On October 26, 1983, by means of an "acknowledgment of default," the Hoys purported to return the 168 acres to the Keiths. As of the date of bankruptcy, the property in question was in the hands of the same Johnny Max Titus who was said to be farming the property which the Tituses, as observed above, had transferred to the Keiths. The defendants contend that they were in default on their 1980 and 1983 principal payments and interest thereon at the time they retransferred the property to the Keiths.[4] They adduced expert opinion evidence during the trial of this action to the effect that, as of August 28, 1984, the value of the transferred property was $59,000.[5] It was recognized that the property would have been worth 12–14% more as of October 1983.[6] On cross-examination of the plaintiff's principal witness, the defendants' able counsel

---

1. This conclusion is based upon the uncontradicted testimony of the plaintiff's principal witness, Doug Walter, its vice president.

2. None of the evidence contradicts this finding. It is based upon the opinion of Mr. Walter, plus the documentary evidence of the defendants' financial statements.

3. Again, the testimonial statements of Mr. Walter in this respect are not contradicted.

4. These statements were contained in some unsigned answers to interrogatories contained in the file. There is nothing in the evidence to

support this contention. But the court has noted that this appears to be the contention of the defendants.

5. The real estate broker Carl Graham testified to this effect, but also noted that, in October 1983, when the transfer was in fact effected, the property would have had a 12 to 14% higher value. Thus, the property may have been worth as much as $67,260 on the date it was transferred.

6. See note 5, *supra*.

brought out the fact that other property had been foreclosed by the bank and the proceeds of the sale thereof had been applied against the Hoys' outstanding indebtedness, but that the amount applied was insufficient to extinguish the indebtedness.[7] Uncontradicted evidence establishes that the Hoys were insolvent as of the date of the transfer of the property back to the Keiths.[8]

### Conclusions of Law

The governing statutory provision is section 727(a)(2) of the Bankruptcy Code, which pertinently provides that "(t)he court shall grant the debtor a discharge unless ... the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred.... or has permitted to be transferred ... property of the debtor, within one year before the date of the filing of the petition." Under this section, "(i)n order to justify a refusal of discharge ..., it must be shown that the acts complained of were done with an intent to hinder, delay, or defraud ... creditors. This intent, moreover, must be an *actual fraudulent intent* as distinguished from constructive intent." 1A Collier on Bankruptcy para. 14.47(1), pp. 1410, 1411 (1978) (Emphasis added.). "It is well established, however, that the element of intention is seldom provable by direct judicial admission of the defendant and ordinarily must be shown by circumstantial evidence." *Matter of Curl,* In proceedings for straight liquidation under chapter 7 of the Bankruptcy Code, 49 B.R. 302 (Bkrtcy. W.D.Mo.1985). "Fraud, being difficult to establish by direct proof, may also be shown by circumstantial evidence." *Barnard v. Barnard,* 568 S.W.2d 567, 570 (Mo. App.1978). "It has always been held that fraud may be proven by circumstantial evidence, if that evidence affords a clear inference of fraud, and amounts to more than a mere suspicion or conjecture." *Herrold v. Hart,* 290 S.W.2d 49, 55 (Mo.1956). "While it is undoubtedly true as a general legal proposition that 'fraud is not to be presumed, but must be proved by the party alleging it,' yet it is equally true that fraud is seldom capable of direct proof, but for the most part has to be established by a number and variety of circumstances, which, although apparently trivial and unimportant, when considered singly, afford, when combined together, the most irrefragable and convincing proof of a fraudulent design." *Allison v. Mildred,* 307 S.W.2d 447, 453 (Mo.1957). "There are a number of indicia or badges of fraud and, although usually none by itself establishes fraud, a strong inference of fraud arises from a concurrence of several badges of fraud; such as: a conveyance in anticipation of suit; a conveyance to near relatives; inadequacy of consideration; unusual clauses in instruments or unusual methods of transacting business; transfer of all or nearly all the debtor's property; insolvency; retention of possession by the debtor; the failure to produce available explanatory or rebutting evidence when the circumstances attending the transfer are suspicious." *Id.* at 454. In both of these actions, the challenged transfers were after the filing of a suit and in anticipation thereof. The debtors who made the transfers were both insolvent. In both cases, the transfers represented a great portion of the debtors' respective property. And, in the case involving the Tituses, the evidence justifies an inference that they retained possession of the property through control of their minor grandson.

Nor, in either case, can there be any question concerning the inadequacy of consideration. In the Titus case, it is plainly and clearly shown that property having a value of $24,000 was transferred with the only conceivable consideration being the release of a mortgage of $4,000. In the Hoy case, any construction of the evidence demonstrates that an equity which would have otherwise been available to creditors was transferred. This is so whether the court

---

**7.** It seemed to have been insinuated by the tenor of the cross-examination of the bank's principal witness that the indebtedness remaining from the defendants after liquidation of the other property may have been higher than it would otherwise have been if liquidation had taken place at full market value. But these issues are not properly before this court at this time to decide.

**8.** The testimony of the bank's principal witness is uncontradicted in this regard.

accepts the $75,000 purchase price as the value of the property transferred or the estimate of the defendants' expert witness that the value is approximately $65,000. In either case, the value of the property exceeds the balance due for which it has ostensibly been returned to the Keiths and the consideration is therefore insufficient.

This court therefore concludes that there is a sufficient confluence of badges of fraud to warrant the denial of the discharge in bankruptcy on an ultimate finding that there was actual intent to hinder, delay and defraud creditors with respect to both sets of defendants. This is especially so when there has been no attempt by the defendants, which is sufficient in contemplation of the law, to explain the existence of these badges of fraud so that the court would be warranted in not finding the existence of actual intent to hinder, delay and defraud creditors. This is so in this set of cases, not only because some of the defendants failed and refused to make the discovery required by the procedural rules as requested by the plaintiff,[9] but also because no satisfactory explanation was testimonially offered at trial. As analyzed above, there are many badges of fraud, therefore, which have neither been refuted nor explained. "Where there is a concurrence of so many badges (of fraud), a strong inference of fraud is raised, and a court of equity will be justified in finding its existence, in the absence of some explanation on the part of the defendant." *Toomay v. Graham*, 151 S.W.2d 119, 125 (Mo. App.1941).

No reason therefore appears not to deny the discharges in bankruptcy of the defendants. It is accordingly hereby

ORDERED, ADJUDGED AND DECREED that the respective discharges in bankruptcy of the defendants Titus and Hoy be, and they are hereby, denied.

---

9. Default judgment may be warranted on this ground alone. Nevertheless, because the court can predicate its judgment on substantive grounds, this procedural ground may not be necessary. The court will give further consideration to the issue of whether further sanctions should be imposed upon the defendants for their alleged failure to respond to the plaintiff's discovery demands.