In re James H. INGERSOLL, Jr., Debtor.

James H. INGERSOLL, Jr., Appellant,

v.

Donald D. KRISEMAN, Appellee.

No. 89–1565–CIV–T 17C.

United States District Court, M.D. Florida, Tampa Division.

Feb. 4, 1991.

Russell M. Blain, Stichter & Riedel, P.A., Tampa, Fla., for appellant.

Charles Medearis, St. Petersburg, Fla., Trustee.

Jay B. Verona, St. Petersburg, Fla., for appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA

KOVACHEVICH, District Judge.

This cause is before the Court on appeal from the denial of the Debtor's discharge for bankruptcy pursuant to 11 U.S.C. § 727(a)(2) and (a)(4) entered on October 5, 1989, by Chief Bankruptcy Judge Alexander L. Paskay. 106 B.R. 287.

STANDARD OF APPELLATE REVIEW

Findings of fact by the Bankruptcy Court will not be set aside unless clearly erroneous. Bankruptcy Rule 8013; *In re*

*Downtown Properties, Ltd.,* 794 F.2d 647 (11th Cir.1986). However, appellant is entitled to an independent, *de novo* review of all conclusions of law and the legal significance accorded to the facts. *In re Owen,* 86 B.R. 691 (M.D.Fla.1988).

## FACTS

In 1975, the Debtor, James H. Ingersoll, Jr. and his wife acquired a one-half interest in Lot 132 and 133 of Crystal Downs property located in Benzie County, Michigan. In 1982, they also acquired a one-half interest in Lot 131 of the Crystal Downs property. Pursuant to the purchase of Lots 132 and 133, the Debtor executed a mortgage securing the payment of a $58,000 promissory note. This note required semi-annual installment payments. The final payment was due on June 1, 1984 and the mortgage was finally satisfied on November 28, 1984.

The Debtor became acquainted with the appellee, Donald D. Kriseman, in 1980 when he together with his father, James H. Ingersoll, Sr., and two others purchased the stock of a company known as Modern Wholesale Hardware, Inc., in Pinellas County, Florida. Incident to the purchase of Modern, the Debtor made a personal guarantee payment to the appellee for a lease agreement, a consulting agreement and a promissory note.

In 1982, the Debtor's father, Mr. Ingersoll, Sr., formed a real estate investment and development corporation known as Hinchliff Corporation. Nine Hundred Twenty (920) shares of Hinchliff shares were issued to Mr. Ingersoll, Sr. and eighty (80) shares were issued to the Debtor. Through Hinchliff Corporation, Mr. Ingersoll, Sr. loaned the Debtor and/or Modern Wholesale a total of $500,000 in 1983 and 1984, and $225,000 in 1985.

On January 1, 1984, the Debtor and his wife entered into an agreement to transfer Lots 132 and 133 of the Crystal Downs property to Mr. Ingersoll, Sr. The Debtor also agreed to transfer his eighty (80) shares of Hinchliff stock back to his father. Despite the agreement to transfer Lots 132 and 133, the Debtor still maintained his five-bedroom summer home on this property. He continued to pay the mortgage payments, maintenance expenses, taxes and insurance on this property. Also on January 1, 1984, the Debtor submitted a mortgage loan application to the First National Bank of Clearwater in which he assigned a value of $200,000 to his supposed ownership interest in the Crystal Downs property. In 1985 and 1986, the Debtor also claimed a deduction for payment of real estate taxes on this Crystal Downs property.

The Hinchliff land trust was executed on February 28, 1984. The title to property known as Lighthouse Towers, Condominiums, Unit # 2006, was vested in the Debtor as Truster under the land trust. The Debtor was also listed as one of the three beneficiaries of the land trust.

In October of 1984, Mr. Ingersoll, Sr. transferred title to a 1979 Lincoln Towncar to the Debtor. On his application for certification of title and/or vehicle registration and on the motor vehicle sales and use tax report, the Debtor described this transaction as a gift. The certificate of title issued by the State of Florida also showed the Debtor to be the owner of the vehicle. It is an undisputed fact that from October of 1984 through the date in which he filed his bankruptcy Petition, that the Debtor had uninterrupted use of the automobile for personal and business matters.

On November 28, 1984, the First National Bank of Clearwater received a financial statement from the Debtor, in which he claimed that his shares in Hinchliff Corporation were worth $4,000. The Debtor also valued his 1979 Lincoln Towncar at $6,000.

Modern Wholesale Hardware and four related companies filed voluntary Chapter 11 Petitions for Relief on August 1, 1985. The Debtor signed these petitions as president. Modern and the Debtor also defaulted under the consulting agreement and lease agreement with the Appellee, Donald Kriseman. After sending the Debtor many notices of default and demands for payment of financial obligations, the Appellee filed suit on September 5, 1985 against the Debtor and others for breach of the lease agreement. On April 23, 1987, Final Judg-

ment was entered for the Appellee and against the Debtor in the amount of $668,-872.12.

On November 1, 1985, a quitclaim deed allegedly transferring ownership of Lots 132 and 133 of the Crystal Downs property from the Debtor and his wife to his father, Mr. Ingersoll, Sr., was signed by the Debtor and notarized. However, the deed was not recorded until January 29, 1988, thirty-two days prior to the Debtor's filing of the Petition for Relief.

The Debtor filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on February 28, 1988. Under his schedules and statement of affairs, the Debtor lists his joint ownership with his wife in a 1976 Buick station wagon as the only automobile in which he has an interest. The Debtor also listed his homestead as his only interest in real property. Despite being issued eighty (80) shares of Hinchliff Corporation stock in 1982, the Debtor responded that he did not have any stock or interest in any incorporated or unincorporated companies.

At trial, Judge Paskay denied the Debtor discharge for bankruptcy under 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A). The Bankruptcy Court denied discharge under § 727(a)(2)(A) of the Bankruptcy Code based on its finding that the Debtor had transferred the Crystal Downs property within one (1) year of the date of the filing of the Petition in order to hinder, delay or defraud the Appellee. The court also denied discharge pursuant to § 727(a)(4)(A) upon finding that the Debtor's failure to disclose his ownership interest in the 1979 Lincoln Towncar was a material omission which was intended to conceal his ownership of the automobile from the Appellee.

## ISSUES

I. WHETHER THE BANKRUPTCY COURT ERRED IN FINDING THAT THE DEBTOR TRANSFERRED PROPERTY WITHIN ONE YEAR OF THE DATE OF THE FILING OF THE PETITION WITH THE INTENT TO HIN-DER, DELAY, OR DEFRAUD HIS CREDITOR.

II. WHETHER THE BANKRUPTCY COURT ERRED IN FINDING THAT THE DEBTOR KNOWINGLY AND FRAUDULENTLY MADE A MATERIAL FALSE OATH IN FAILING TO DISCLOSE HIS INTEREST IN A 1979 LINCOLN TOWNCAR ON HIS SCHEDULE OF ASSETS.

III. WHETHER THE BANKRUPTCY COURT ERRED IN DENYING THE DEBTOR'S MOTION FOR RECONSIDERATION.

## DISCUSSION

The Appellee objected to the Debtor's discharge for bankruptcy based on 11 U.S.C. § 727(a)(2), which states:

(a) The court shall grant the Debtor a discharge, unless ...

(2) the Debtor, with intent to hinder, delay, or defraud a creditor ..., has transferred, ...

(A) property of the Debtor, within one year before the date of the filing of the petition; ...

"In order to prevail under the theory that a fraudulent transfer has occurred, four elements must be proven. The plaintiff must prove that:

(1) A transfer of property has occurred;

(2) It was the property of the Debtor;

(3) The transfer was within one year of the date of the filing of the petition;

(4) The defendant had at the time of the transfer, the intent to hinder, delay or defraud a creditor."

*In re Ford,* 53 B.R. 444, 446 (Bankr.W.D. Va.1984) (quoting *In re Reed,* 18 B.R. 462, 463 (Bankr.E.D.Tenn.1982)).

In the present case, the Debtor and his wife obtained title to a one-half interest in Lots 132 and 133 of the Crystal Downs property in 1975. The record title to these lots remained in the Debtor's name until January 29, 1988 when a quitclaim deed was recorded transferring the Debtor's interest in Lots 132 and 133 to his father, Mr. Ingersoll, Sr. Therefore, a transfer of

property did occur and the Debtor did have an ownership interest in this property.

The Bankruptcy Court determined that the transfer of this property occurred within one year of the filing of the Petition because although the Debtor attempted the transfer in November of 1985, the transfer was not effectuated for the rest of the world until the deed was recorded on January 29, 1988. This recording occurred only thirty-two days prior to the Debtor's filing of the Petition for Relief.

■■■ A transfer becomes effective as to bona fide purchasers or third parties once it is recorded in the clerk's office. *In re Ford*, 53 B.R. 444, 447 (Bankr.W.D.Va. 1984) (quoting *In re Munden*, 8 B.R. 142, 144 (Bankr.E.D.Va.1981)). *In re Gonzalez*, 92 B.R. 960, 962 (Bankr.S.D.Fla.1988) (In violation of 11 U.S.C. § 727(a)(2)(A), the Debtors recorded the mortgage within one year of their filing for bankruptcy.) Since the quitclaim deed to the Crystal Downs property was recorded January 29, 1988, and the Debtor's Petition was filed on February 29, 1988, the transfer of Lots 132 and 133 was made within one year of the date of the filing of the Petition for Relief.

Incident to the purchase of Modern Wholesale Hardware, Inc., the Debtor executed a personal guarantee payment to the Appellee for a lease agreement, a consulting agreement and a promissory note. The Debtor defaulted on these agreements with the Appellee on August 15, 1985 after Modern Wholesale filed voluntary Chapter 11 Petitions for Relief. The Appellee filed suit against the Debtor for breach of the lease agreement on September 5, 1985. In light of these facts, the Bankruptcy Court determined that the Debtor attempted to effectuate the transfer of Lots 132 and 133 in November of 1985 because of the pending lawsuit filed by the Appellee. The court also determined that although the Debtor testified that he intended to transfer the property to his father on January 1, 1984, the Debtor continued to use this property as his own. After January 1, 1984, the Debtor continued to pay the mortgage payments, the maintenance expenses, the real estate taxes and also claimed a tax deduction for the real estate taxes paid. Based on this evidence, the court held that the appellee had met his burden of proof and that the Debtor had transferred Lots 132 and 133 within one year of the date of the filing of the Petition with an intent to hinder, delay, or defraud the Appellee.

■■■ Under Bankruptcy Rule 4005, the creditor has the burden of proving his objection to the Debtor's discharge by clear and convincing evidence. *In re Ford*, 53 B.R. 444, 449 (D.C.W.D.Va.1984). If the creditor does establish reasonable grounds for denial by clear and convincing evidence, the burden shifts to the Debtor to show whether the transfer was justified. *Id.* See also *In re Penner*, 107 B.R. 171, 174 (Bankr.N.D.Ind.1989).

■■■ The question of whether a debtor had the intent to hinder, delay or defraud his creditors is usually a question of fact but when there is a gratuitous transfer of valuable property a presumption is raised that the transfer must have been accompanied by the actual fraudulent intent required to bar discharge. *In re Ford*, 53 B.R. at 449 (citing 4 *Collier on Bankruptcy*, paragraph 727.02(3), at 727–13 & 14 (15th ed.1984)). To prove the Debtor's fraudulent intent, the creditor must show actual intent. *In re Syrtveit*, 105 B.R. 596, 598 (Bankr.D.Mont.1989). This actual intent can be proven by circumstantial evidence or it can be inferred from the Debtor's actions. *Id.* In addition, there are certain factors called "badges of fraud" which if are determined to be present strongly indicate the existence of actual fraudulent intent. *In re Penner*, 107 B.R. 171, 175 (Bankr.N.D.Ind.1989). Common badges of fraud include:

"(1) The lack or inadequacy of consideration for the property transferred;

(2) The existence of a family, friendship, or other close relationship between the transferor and the transferee;

(3) The transferor's retention of the possession, control, benefits, or use of the property in question;

(4) The financial condition of the transferor both before and after the

transfer took place (i.e., whether the transfer resulted in insolvency);

(5) The cumulative effect of these transactions and course of conduct after the onset of financial difficulties or dependency or threat of suit by creditors; and

(6) The general chronology and timing of the transfer in question."

*Id.* at 175–76.

The presence of several of these factors leads inescapably to the conclusion that the Debtor possessed the necessary fraudulent intent. *Id.* at 176 (citing *Matter of Titus,* 75 B.R. 256, 259–60 (Bankr.W.D. Mo.1985)). However, even the presence of only one of these factors has been held to justify a finding of actual fraudulent intent. *Id.*

Based on this analysis, it is clear that the Bankruptcy Court was correct in finding that the Debtor did possess the requisite actual fraudulent intent to hinder, delay or defraud the Appellee. The Appellee demonstrated reasonable grounds for the denial of discharge based on the fact that the Debtor attempted to transfer the property to his father because of the Appellee's pending lawsuit against the Debtor. The Appellee also raised the presumption that since this was a gratuitous transfer of valuable property, fraudulent intent must have accompanied the transfer. Furthermore, the Debtor failed to show sufficient evidence to rebut this presumption. Fraudulent intent can also be inferred from the Debtor's actions in attempting to effectuate the transfer of Lots 132 and 133 only two months after the Appellee filed suit against the Debtor.

The Debtor has also met every badge of fraud in this case. The appearance of every badge of fraud overwhelmingly indicates the Debtor's actual fraudulent intent. The Debtor transferred Lots 132 and 133 to his father. The transfer lacked adequate consideration because the Debtor valued the property for the First National Bank of Clearwater at $200,000 but transferred the property to his father as consideration for release of a $10,000 loan. The Debtor also maintained control over the property, pay-

ing all the expenses and receiving all the benefits from the property. The timing and circumstances also indicate that the Debtor was transferring the property in an attempt to hinder the Appellee in his lawsuit against the Debtor.

All the elements of a fraudulent transfer are present. Therefore, the denial of discharge by the Bankruptcy Court on the basis that the Debtor transferred property within one year of filing the Petition for Relief with the intent to hinder, delay or defraud the Appellee was appropriate.

11 U.S.C. § 727(a)(4)(A) provides:

"(a) The court shall grant the debtor a discharge, unless . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account." .

The purpose of 11 U.S.C. § 727(a)(4)(A) is to insure that sufficient facts are available to all persons interested in the administration of the bankruptcy estate without requiring investigations or examinations to discover whether the information provided is true. *In re Kaiser,* 94 B.R. 777, 778 (Bankr.S.D.Fla.1988) (citing *In re Watkins,* 84 B.R. 246 (Bankr.S.D.Fla. 1988)). Under the subsection, the debtor has an obligation to disclose the existence of all assets, even if they are worthless or unavailable. *Id.* Debtors cannot escape disclosure under this subsection by claiming that assets omitted are worthless; it is up to the creditors to decide for themselves what assets will be of benefit to them and which will not. *Id.* (citing *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984)).

In order to deny a debtor discharge pursuant to § 727(a)(4)(A), making a false oath or account, two elements must be proven. First, the debtor's oath or account must have been knowingly and fraudulently made; and second, it must be related to a material fact. *In re Syrtveit,* 105 B.R. 596, 598 (Bankr.D.Mont.1989).

In determining whether the Debtor knowingly and fraudulently failed to list his 1979 Lincoln Towncar in his Schedule of Assets, the Bankruptcy Court examined

the totality of the circumstances. The court held that in this case the totality of the circumstances indicated fraud.

 The Bankruptcy Court's finding of fraudulent intent is correct in this case. A debtor's fraudulent intent can be inferred from the totality of the circumstances. *In re Kaiser,* 94 B.R. at 778 (citing *In re Cabrera,* 71 B.R. 200 (Bankr. S.D.Fla.1987)). The requisite intent may also be inferred where the debtor's conduct evidences a "cavalier disregard for the truth." *Id.*

 In this case, the Debtor claimed that the automobile was a gift from his father. The State of Florida certificate of title for the Lincoln Towncar showed the Debtor as the owner of the vehicle. Despite this evidence, the Debtor listed the automobile in Item 6 of his Statement of Financial Affairs as a property which he was holding for another person. This action demonstrates a scheme to mislead creditors and is sufficient evidence of fraudulent intent to bar the Debtor from discharge.

 The materiality of a false oath or account does not depend on whether the creditors were prejudiced by the false statement or omission. *In re Kaiser,* 94 B.R. at 778. Instead materiality depends on whether the false oath was connected to the discovery of assets, business transactions, or past business dealings. *Id.*

The Bankruptcy Court was correct in concluding that the Debtor's failure to list his Lincoln Towncar on his Schedule of Assets was a material omission. This omission hindered the Appellee because the Debtor withheld information concerning the discovery of assets. As the Debtor failed to comply with his obligation of full disclosure, the Court's denial of discharge was appropriate.

The Bankruptcy Court properly denied the Debtor's motion for reconsideration. Under Rule 59 of the Federal Rules of Civil Procedure, there are three possible grounds for a new trial or to amend or alter a judgment in an action tried without a jury:

(1) manifest error of law;

(2) manifest error of fact;

(3) or newly discovered evidence.

*In re Mitchell,* 70 B.R. 524, 525 (Bankr. N.D.Ill.1987).

 In this case, the Debtor did not raise any manifest errors of fact or law, or allege any newly discovered evidence that could not have been discovered before the judgment was rendered with reasonable diligence. Additionally, the Debtor cannot use a motion for reconsideration to raise arguments that could have or should have been made at trial or argue the case under a new legal theory. See *In re Mitchell,* 70 B.R. at 526.

## CONCLUSION

The Bankruptcy Court did not err in denying the Debtor's discharge for bankruptcy. The court correctly concluded that the Debtor transferred property within one year of the filing of the Petition for Relief with the intent to hinder, delay or defraud the Appellee. The court also properly found that the Debtor knowingly and fraudulently made a false oath in failing to disclose his ownership interest in a 1979 Lincoln Towncar in his Schedule of Assets. Further, the Debtor did not raise any grounds which warrant reconsideration of its judgment, therefore the court did not err in denying the Debtor's motion for reconsideration. Accordingly, it is

ORDERED that the Bankruptcy Court's Order denying Mr. James H. Ingersoll, Jr.'s discharge for bankruptcy is AFFIRMED. It is further ORDERED that the Bankruptcy Court's denial of the motion for reconsideration is AFFIRMED. The Clerk of the Court is directed to enter judgment in accordance with this Order.

DONE and ORDERED.