**In re Renee Michelle McELROY, Debtor.**

**Aaron R. Cohen as Trustee of the Estate of Renee Michelle McElroy, Plaintiff,**

v.

**Renee Michelle McElroy, Defendant.**

**Bankruptcy No. 97–6922–BKC–3F7. Adversary No. 97–416.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Oct. 9, 1998.

**485**

Albert H. Mickler, Jacksonville, FL, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding came before the Court for trial on December 15, 1997 on a Complaint Objecting to Debtor's Discharge filed by Aaron R. Cohen, the Chapter 7 Trustee ("Plaintiff") pursuant to 11 U.S.C. § 727(a)(2) and (a)(4). (Doc. 1.) Based upon the evidence presented and the argument of counsel, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Renee Michelle McElroy ("Defendant") filed this Chapter 7 Case on September 11, 1997. Aaron R. Cohen ("Trustee") was appointed Trustee of the Estate. The Trustee filed an application to employ W. Thomas Copeland ("Special Counsel") as Special Counsel for the Trustee in the Main Case, which the Court granted. Special Counsel, on behalf of the Trustee, filed a Complaint Objecting to the Debtor's Discharge on December 15, 1997. (Doc. 1.)

Defendant listed $600.00 of total assets and $65,730.40 of total liabilities. (Pl.'s Ex. 1.) Defendant is married with two children from previous marriages and has three stepchildren. She has been involved in custody battles resulting in attorney's fees in excess of $20,000.00. These custody battles financially strained the Defendant, leading her to file bankruptcy.

Defendant earned $44,000.00 as the manager of a large apartment complex before losing that position in July of 1995. She has been unable to obtain comparable employment since that time and is currently unemployed.[1] To pay for attorney fees to fight for the custody of her children, Defendant claims to have sold furniture and other belongings, primarily to her mother and stepfather, for

W. Thomas Copeland, Jacksonville Beach, FL, for plaintiff.

---

1. Defendant's tax returns for 1996 and 1997, listed $17,014.00 and $17,468.00, respectively, as income. (Def.'s Ex. 1,2.)

cash. Defendant also claims to have pawned jewelry. Defendant claims to have no personal bank account, rather she deposits all earnings in accounts belonging to her mother and a friend. Defendant then writes checks or has checks written out of these accounts to pay her bills. No accounting of Defendant's funds being either deposited in or withdrawn from these accounts was made to the Court.

Defendant's Schedule I—Current Income of Individual Debtor lists a total monthly income of $2,243.76 [2], which includes $500.00 per month of child support. Defendant's Schedule J—Current Expenditures of Individual Debtors provides for $1,985.00 of monthly payments. [3]

The Trustee held a telephone interview with Defendant on October 16, 1997. That same day, Defendant's meeting of creditors was held. The Trustee suspects Defendant's Schedules have omissions and inaccuracies, including undisclosed signatory authority on at least one bank account, use of an automobile in which Defendant had no ownership interest, and transferred or lost possessions.

The Trustee sent Defendant a letter on September 17, 1997 requesting documentation, tax returns, copies of all checks, and check registers and bank statements for any account on which Defendant was a signatory. The Trustee never received any of this information. Despite not listing any accounts in her schedules, Defendant admitted to the Trustee that she had signatory authority on two bank accounts, one for emergency purposes. The Trustee has made no efforts to collect any funds from those accounts.

Defendant testified that she explained to the Trustee that she has access to two ac-

counts, one of which belongs to her mother and the other belongs to a friend. Defendant stated that her mother's account is only used for emergency purposes. [4] Defendant stated that she occasionally used her friend's account for her own finances, but that the account was primarily to pay her friend's bills because he was often out of town. [5]

The Trustee's Complaint Objecting to Debtor's Discharge alleges that Debtor's Schedules and Statement of Affairs are false, including failure to list an interest in several bank accounts, household furniture, and other assets. The Trustee alleges these omissions were deliberate and intentional, designed to mislead the Trustee, creditors, and the Court. The Trustee also alleges that Defendant overstated expenses in her schedules. Defendant denies these allegations.

## CONCLUSIONS OF LAW

■ The Bankruptcy Code favors discharge of the honest debtor's debts and provisions denying this discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 712 (Bankr.D.S.C.1995). However, there are limitations on the right of a debtor to discharge.

■ Addressing the individual counts of the Plaintiff's Complaint, Sections 727(a)(2) and (a)(4) state in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has trans-

2. Defendant was employed when she filed these schedules. At the time of the hearings for this proceeding, Defendant was unemployed.

3. These payments include $435.00 per month for rent, $481.00 per month for transportation (representing payment for use of an automobile titled in her mother's name), $75.00 per month for auto insurance, $200.00 per month for food, and $600.00 per month for day care.

4. This account with Barnett Bank listed Phyllis Armstrong (Defendant's mother), Melvin Armstrong (Defendant's stepfather), and Defendant

as having signatory authority. Account balance sheets were admitted into evidence, but no proof as to the source of funds in the account was presented. (Pl.'s Ex. 7.)

5. This account with Compass Bank listed Defendant and Ronald W. St. Germain (Defendant's friend) as having signatory authority. Account balance sheets were admitted into evidence which listed withdrawals and deposits, but again no proof as to the source of funds being deposited into or withdrawn from the account was presented. (Pl.'s Ex. 9.)

ferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

 (A) property of the debtor, within one year before the date of the filing of the petition; or

 (B) property of the estate, after the date of the filing of the petition;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

 (A) made a false oath or account;

 (B) presented or used a false claim;

 (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

 (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

11 U.S.C. § 727(a)(2), (4) (1998). Federal Rule of Bankruptcy Procedure 4005 provides that the initial burden of proof on an objection to discharge lies with the plaintiff. Fed.R.Bankr.P. 4005. However, it is well established that once the plaintiff has met the initial burden by producing evidence which establishes a basis for the objection, the defendant has the ultimate burden of persuasion. *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984); *Manhattan Leasing Systems, Inc. v. Goblick (In re Goblick)*, 93 B.R. 771, 775 (Bankr. M.D.Fla.1988).

 ■ Pursuant to 11 U.S.C. § 727(a)(2)(A), the objecting party must prove by a preponderance of the evidence that: (1) a transfer occurred; (2) the transfer was of debtor's property; (3) the transfer was within one year of the petition, and (4) the transfer was done with the intent to hinder, delay, or defraud a creditor or the trustee. *Williamson Const., Inc. v. Ross (In re Ross)*, 217 B.R. 319, 323 (Bankr.M.D.Fla. 1998) (citations omitted). In order to find fraudulent intent, the Court can consider cir-

cumstantial evidence or can infer it from the debtor's action. *Ingersoll v. Kriseman (In re Ingersoll)*, 124 B.R. 116, 121 (M.D.Fla. 1991). "Badges of Fraud" are strong indicators of fraudulent intent. *Id.* These "Badges of Fraud" include: (1) lack of adequate consideration for the property transferred; (2) a family or close relationship between the parties; (3) retention of possession for use and benefit; (4) financial condition of the transferor before and after the transfer; (5) cumulative effect of the transactions and course of conduct after onset of financial difficulties or threat of suit; and (6) general chronology and timing of events. *Id.*, 124 B.R. at 121–22.

 ■ The preponderance of the evidence establishes that Defendant did transfer property. Timing of these transfers was not specifically established, however, the Plaintiff failed to establish by a preponderance of the evidence that these transfers were done with the intent to hinder, delay, or defraud a creditor or the trustee. Other than questionable testimony from Defendant's ex-husband, ex-husband's new wife, and ex-boyfriend, no real proof is in the record contradicting Defendant's testimony concerning the transfer of her property. Defendant stated that she needed money to pay attorney fees for custody battles. Unable to find steady employment, Defendant sold property purchased by her on credit to obtain money to pay the fees necessary for her custody battles.

 ■ "Extrinsic evidence of fraud, for purposes of defeating discharge, can be comprised of conduct intentionally designed to materially mislead or deceive creditors about a debtor's position; conveyances for less than fair value; or continued retention, benefit, or use of property allegedly conveyed together with evidence that conveyance was for inadequate consideration." 184 B.R. at 713 (citing *In re Johnson*, 880 F.2d 78, 82 (8th Cir. 1989)). These assets were primarily transferred to Defendant's mother and stepfather, one of the "badges of fraud". But in consideration of the transfer of property, Defendant received much needed money to fight for the custody of her children. The Court believes Defendant's explanation of the events concerning the transfer of her proper-

ty. The record lacks both the actual and circumstantial evidence necessary to establish that Defendant sought to intentionally deceive her creditors.

 Section 727(a)(4) provides four distinct grounds to deny a debtor's discharge. Each of these requires that the debtor "knowingly and fraudulently" act in a prescribed manner. Section 727(a)(4)(A) requires a court to find that the debtor knowingly made a false oath that was both fraudulent and material. *See Swicegood v. Ginn,* 924 F.2d 230 (11th Cir.1991). To be fraudulent, the oath must be made with "a knowing intent to defraud creditors." *Parnes v. Parnes (In re Parnes),* 200 B.R. 710, 714 (Bankr.N.D.Ga.1996) (citing *Swicegood,* 924 F.2d at 232). Fraudulent intent may be inferred from circumstantial evidence, including a series or pattern of errors or omissions. *Id.* For a false oath to be considered material, it must be shown that it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik,* 748 F.2d at 618 (citations omitted).

 Plaintiff's initial burden under Section 727(a)(4)(A) requires establishing that: (1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case. *Congress Talcott Corp. v. Sicari (In re Sicari),* 187 B.R. 861, 880 (Bankr.S.D.N.Y.1994). Omissions from a debtor's sworn statement of affairs or schedules provide grounds for denying discharge. *Chalik,* 748 F.2d at 618. A debtor's complete disclosure is essential to the proper administration of the bankruptcy estate. *In re Evans,* 106 B.R. 722, 723 (Bankr.M.D.Fla. 1989). This disclosure serves the purpose of providing reliable information to those with an interest in the bankruptcy estate, who are entitled to a truthful statement of the debtor's affairs.

 Defendant's duty in filing her bankruptcy petition was to list all assets and fully answer the questions set forth in the petition. This duty was performed under oath. Defendant neglected to list her having signatory authority on two bank accounts. Whether or not Defendant had any of her own funds deposited in these bank accounts, omitting them from her schedules constitutes a false oath.

 Despite making a false oath, the Court finds no evidence that Defendant omitted her interest in the accounts with fraudulent intent. The Court believes Defendant's statement concerning her use of the accounts. No evidence is in the record pinpointing certain funds in these accounts actually belonging to Defendant. Defendant did not intend to hide these accounts, rather she admitted having signatory authority on both accounts to the Trustee prior to the meeting of creditors. From the evidence presented, the Court finds that Defendant had no fraudulent intent when she failed to list her interest in these accounts in her schedules.

Plaintiff did not specifically plead nor argue any specific ground for discharge under Section 727(a)(4). In finding Defendant had no fraudulent intent under Section 727(a)(4)(A), the Court sees no reason to discuss other grounds to deny a discharge under that Section because each requires the element of fraudulent intent.

For the reasons discussed above, the Court denies the Trustee's objections to discharge under Section 727(a)(2) and Section 727(a)(4). Therefore, Defendant is entitled to a discharge under Chapter 7 of the Bankruptcy Code.