[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**October 21, 2008**
**THOMAS K. KAHN**
**CLERK**

No. 08-12484
Non-Argument Calendar

_____

D. C. Docket Nos. 07-00617-CV-J-16 & 05-11381-GLP

IN Re:  PETER R. OSTERMAN, JR.,

Debtor.


BUCKEYE RETIREMENT CO., LLC, LTD,

Plaintiff-Appellant,

versus

PETER R. OSTERMAN, JR.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 21, 2008)**

Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Buckeye Retirement Co., LLC, Ltd. ("Buckeye") appeals the district court's order affirming the bankruptcy court's judgment and order granting a discharge to Debtor Peter Osterman, Jr. ("Osterman"). Buckeye asserts that the bankruptcy court erred by finding that Osterman did not act with the intent to hinder, delay or defraud his creditors when he transferred money, automobiles and jewelry to family members within one year of filing for Chapter 7 bankruptcy.

After review of the record and the parties' briefs, we conclude that the bankruptcy court and district court did not err in finding that Osterman made these transfers without the intent to hinder, delay, or defraud his creditors. Accordingly, we **AFFIRM.**

The following facts are undisputed on appeal: Osterman is the former owner of ProJr., Inc., which did business until 2001 as LK Erectors. Osterman financed his acquisition of LK Erectors with a $750,000.00 Small Business Administration Loan ("SBA Loan"), for which Osterman signed a personal guaranty. In late 2000, Osterman sold his business; however, Osterman was required to retain his guaranty. Shortly after this sale, LK Erectors defaulted on

the SBA Loan and ceased doing business, leaving a large balance on the SBA Loan.

In October 2004, Buckeye, as the assignee of the SBA Loan, sued Osterman in state court for breach of guaranty. Osterman filed for Chapter 7 bankruptcy on September 30, 2005. In the year prior to filing, Osterman made the following transfers on the advice of counsel, which are the basis of Buckeye's objection to discharge: (1) in June 2005, Osterman transferred $38,000 from his wage account to his wife, who then gave the money to their eldest son as a down payment for the purchase of his first home; (2) in December 2004, Osterman, with his wife, transferred a 1998 Nissan Maxima and a 1999 Honda Accord to their sons; and (3) in August 2005, Osterman sold jewelry to his wife's company for fair market value of $4,550, and put the proceeds of the sale in the wage account.

On January 13, 2006, Buckeye filed an adversary proceeding in bankruptcy court, arguing that because Osterman transferred property out of his bankruptcy estate in an attempt to defraud his creditors, his discharge should be denied. After a four day trial, the bankruptcy court found that Buckeye did not prove by a preponderance of the evidence that Osterman acted with an intent to defraud. Accordingly, it denied Buckeye's objection and granted discharge. The district court affirmed.

## Standard of Review

We review the district court's decision affirming the bankruptcy court's finding of facts for clear error. In re Williamson, 15 F.3d 1037, 1038 (11th Cir. 1994); see Fed. R. Bankr. P. 8013 (stating that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous"). The burden of establishing clear error is on the party seeking to overturn the findings of the bankruptcy court. In re Caribbean K Line, Ltd., 288 B.R. 908, 911 (Bankr. S.D. Fla. 2002). The district court's legal conclusions are reviewed de novo. In re Bateman, 331 F.3d 821, 825 (11th Cir. 2003).

## Analysis

Section 727(a)(2)(A) of the Bankruptcy Code provides that a debtor shall be granted a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." The creditor opposing discharge must prove by a preponderance of the evidence that: (1) a transfer occurred; (2) the transfer was of debtor's property; (3) the transfer was within one year of the petition, and (4) the transfer was done with the intent to

hinder, delay, or defraud a creditor or the trustee. In re Ross, 217 B.R. 319, 323 (Bankr. M.D. Fla. 1998) (citations omitted). In order to find fraudulent intent, the court can consider circumstantial evidence or can infer it from the debtor's action. In re Ingersoll, 124 B.R. 116, 121 (M.D. Fla. 1991). Courts have identified certain "badges of fraud" which are strong indicators of fraudulent intent. Id. These "badges of fraud" include: (1) lack of adequate consideration for the property transferred; (2) a family or close relationship between the parties; (3) retention of possession for use and benefit; (4) financial condition of the transferor before and after the transfer; (5) cumulative effect of the transactions and course of conduct after onset of financial difficulties or threat of suit; and (6) general chronology and timing of events. Id. at 121-22.

In this case, it is undisputed that Osterman transferred his property at issue within one year of his petition; therefore, the only issue is whether Osterman performed the transfer with the requisite intent to hinder, delay, or defraud his creditors. On appeal, Buckeye asserts that it presented evidence of multiple "badges of fraud" associated with these transfers such that the bankruptcy court was required to shift the burden of proof to Osterman to prove that he did not have the intent to defraud. The bankruptcy court's failure to shift the burden, Buckeye asserts, is an error of law which this court must review de novo. Buckeye did not,

5

however, argue that it was entitled to this shift in the burden of proof in either the bankruptcy court or the district court below.[1] Even if meritorious, Buckeye's failure to press the argument before the bankruptcy or district court foreclosed its right to present it on this appeal. See First Ala. Bank of Montgomery, N.A. v. First State Ins. Co., Inc., 899 F.2d 1045, 1060 n.8 (11th Cir. 1990). Admittedly, our rule foreclosing review of issues not presented below is not jurisdictional and may be abrogated in our sound discretion. Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1332 (11th Cir. 2004). Nonetheless, we reject Buckeye's suggestion that the alleged error is so fundamental and risk of miscarriage of justice so high as to call for the rule's abrogation.[2] The fact that an issue first

---

[1] In its Reply brief to this court, Buckeye asserts that it did raise this issue below when it mentioned in its reply brief to the District Court that the existence of badges of fraud gives rise to a "permissible inference of fraudulent intent." Even assuming this "permissible inference" argument were the same as Buckeye's current argument for burden-shifting, a passing reference to an issue in a reply brief, offered without substantive argument in support, is insufficient to constitute raising the issue. See APA Excelsior III L.P. v. Premiere Technologies, Inc., 476 F.3d 1261, 1269-70 (11th Cir. 2007) (deeming issue waived where litigant did not clearly raise issue in initial brief and made only passing reference to it in reply brief).

[2] Buckeye, citing cases from the Second and Third Circuits, argues that where a district court's error is fundamental, we may consider the error on appeal even if not raised below. Whether the error is "fundamental," however, is not the test we use. We have permitted issues to be raised for the first time on appeal under five circumstances: (1) where the issue involves a "pure question of law" and the refusal to consider it would result in a miscarriage of justice; (2) where the appellant had no opportunity to raise it at the trial level; (3) where strict application of the rule would result in patently unjust results; (4) where the proper resolution is beyond doubt; and (5) where the issue presents significant question of general impact or great public concern. See Access Now, Inc., 385 F.3d at 1332. As we see it, none of these exceptional conditions is found in this case.

raised on appeal may be outcome determinative does not require us to consider it. This approach "would swallow our general rule of waiver, further impeding the efficient administration of justice." First Ala. Bank of Montgomery, 899 F.2d at 1060 n.8.

Because the burden-shifting argument was not preserved for appeal, we must limit our review to the bankruptcy court's factual finding that Osterman did not act with the intent to hinder, delay, or defraud his creditor under a clearly erroneous standard. In re Jennings, 533 F.3d 1333, 1338 (11th Cir. 2008). Deference to the bankruptcy court's findings is "particularly appropriate" because the intent determination will often depend on that court's "assessment of the debtor's credibility." Id. (citing In re Krehl, 86 F.3d 737, 743 (7th Cir. 1996)). "When the district court has affirmed the bankruptcy court's findings . . . we will apply the clearly erroneous doctrine with particular rigor." In re Wines, 997 F.2d 852, 856 (11th Cir. 1993) (quotation and citation omitted).

The bankruptcy court, in its written opinion, expressly considered each of the three questioned transfers and their associated "badges of fraud," but found Osterman's and his wife's testimony, in which they gave legitimate and legal reasons for the transfers, to be credible. Specifically, it believed Osterman when he testified that he transferred $38,000 to his wife, who then gave it to their son

7

for the purchase of a house, for legitimate estate and gift tax reasons. It also believed Osterman's testimony that the transfer of the vehicles to his sons was motivated by a legitimate desire to limit his and his wife's potential liability under Florida law. Finally, it believed Osterman when he testified that the jewelry sale was not to defraud Buckeye, "but to preserve the jewelry for future generations, as it has significant sentimental value to him and his family." We conclude that the bankruptcy court properly considered the "badges of fraud," that its credibility determinations are not clearly erroneous and that its factual findings, therefore, are well supported by the record. For these reasons, we **AFFIRM.**