**In re Jeffrey Michael DUPREE, Debtor.**

**Harry T. Barnes, Sr. and Virginia E. Barnes, Plaintiffs,**

**v.**

**Jeffrey Michael Dupree, Defendant.**

**Bankruptcy No. 03–25827–PMG. Adversary No. 04–158.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 14, 2005.

See also 336 B.R. 490, 2005 WL 3454662, 336 B.R. 498, 2005 WL 3454673, and 336 B.R. 506, 2005 WL 3454674.

W. James Butler, Butler Law Group, PA, Clearwater, FL, Patrick T. Lennon, MacFarlane, Ferguson & McMullen, Tampa, FL, for debtor.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Chief Judge.

**THIS ADVERSARY PROCEEDING** came on for hearing on the Defendant's Motion for Summary Judgment on the five counts of the amended complaint filed by Harry T. Barnes, Sr. and Virginia E. Barnes (the Plaintiffs). The Plaintiffs originally filed a Complaint to Determine Dischargeability of a Debt and Objection to Discharge and To Avoid Fraudulent Transfer and For Turnover against the Debtor (the Defendant), Jeffrey Michael Dupree, on March 16, 2004. Following a hearing on the Defendant's Motion to Dismiss Complaint, an order was entered on July 13, 2004, granting in part and denying in part the motion to dismiss the complaint. The motion to dismiss the complaint was granted with respect to all of the counts except four, Counts I, III, VII and VIII. The Plaintiffs filed an Amended Complaint containing five counts on July 20, 2004, which are the subject of the Defendant's Motion for Summary Judgment. In response to the Defendant's motion, the Plaintiffs filed the Plaintiffs' Reply to Motion for Summary Judgment.

### Background

The Debtor filed his Chapter 7 bankruptcy petition on December 16, 2003. Previously, on March 12, 2003, an NASD arbitration award was entered against the Debtor and his securities brokerage company, Allapree Securities, Inc., in favor of the Plaintiffs in the amount of $50,000. This amount represented compensatory damages for the violation by the Debtor of "the Florida Securities and Investors Protection Act, Fla. Stat. 517.301, breach of fiduciary duty, fraudulent inducement, negligence and negligent supervision..." as set forth in the Award. An award for the Plaintiffs was denied on their claim of intentional infliction of emotional distress and punitive damages. Under "Other Issues Considered and Decided" in the Award, the following statement was included: "At the final hearings, Claimants requested rescission of the GE Annuity contract. The Panel denied this request." An order was entered on August 27, 2003, in the Florida State Court that denied the Defendant's Motion to Vacate the Arbitration Award and denied the Plaintiffs' Motion for Attorneys' Fees. The Debtor filed a Notice of Appeal of this August 27, 2003, Order, but then served a Notice of Voluntary Dismissal of such appeal on December 2, 2003. A hearing on the Petition for Confirmation of Arbitration Award and Request for Attorney Fees and Costs had been scheduled for May 10, 2004, when the Debtor filed for bankruptcy.

Three counts of the Plaintiffs' amended complaint relate to exceptions from discharge of the debt owed to the Plaintiffs by the Debtor pursuant to 11 U.S.C. § 523(a): Count I, 523(a)(2)(A), for money obtained by false pretenses, false representation, or actual fraud; Count II, 523(a)(4), for fraud or defalcation while acting in a fiduciary capacity; and Count III, 523(a)(19), for violation of securities fraud laws. All of these counts relate to a transaction whereby the Debtor, as a securities broker, sold two variable annuities issued by GE Life and Annuity Assurance Company to the Plaintiffs, one in the amount of $74,193 to Mr. Barnes and an-

other in the amount of $51,339 to Mrs. Barnes. This transaction took place in March, 2000, at the time that the Plaintiffs were contemplating an alternative investment for their retirement funds, following the maturity of certificates of deposit. The unsecured claim of the Plaintiffs (Claim # 6) in the Debtor's general case amounted to $320,891.23 at the date of filing of the claim, June 14, 2004.

With regard to his original bankruptcy schedules, in Paragraph 10 of his Statement of Financial Affairs (Other transfers), the Debtor listed the following: "PROPERTY SOLD 2 Skiff Boats 4/03, Single Family Home 9/03," without any further detail. The Debtor testified at his Section 341 meeting on February 2, 2004, and at his continued Section 341 meeting on March 12, 2004, as to various matters with regard to his petition, including the transfer of the assets noted above, as well as to other assets and transfers that were not listed on his schedules. The two counts of the amended complaint relating to the Debtor's bankruptcy estate are entitled "COUNT IV False Oaths 11 U.S.C. § 727(a)(4)(A)" and "COUNT V Withholding Property From the Estate Section § 727(a)(4)(D)." These two counts of the amended complaint encompass the same property, alleged as follows:

"(a) the sale of real property in North Carolina;

(b) interest in a 1984 Ford F150 and various trailers;

(c) his bank accounts which were closed within one year of the date of filing the bankruptcy petition;

(d) 1982 Boston Whaler;

(e) 1999 Express 16′ aluminum boat;

(f) interests in various corporations and/or other business; and

(g) other issues expected to be found or confirmed during discovery."

On March 31, 2004, the Debtor filed an Amended Statement of Financial Affairs that had been executed by the Debtor on March 18, 2004. The Amended Statement provided greater detail in Paragraph 10 as to property transferred in the last year, including buyers' names and addresses, prices paid for property, dates of sale, descriptions of property and relationships to the Debtor. The transfers included a residence located in Port Richey, Florida (date transferred 12/30/02), a residence located in Whittier, North Carolina (9/12/03), two boats and trailers (two sales, "approximately 4/03"), shares of a mutual fund (7/15/03—value of $1,442.00), and shares of XCEL Energy stock (9/15/03—value of $3,132.00). In addition, the Debtor amended Paragraph 11, Closed financial accounts, to disclose a Bank of America checking account in the name of Allapree Advisers, Inc., which was closed in October, 2003, with a final balance of $15.76. The Debtor also amended Paragraph 15 to list his prior address. Paragraph 18, Nature, location and name of business, was amended, adding "Home Inspections of the Suncoast, Inc." with dates of operation of "11/03 to present."

In the Debtor's general case, the U.S. Trustee filed a Motion for Extension of Time Within Which to File a Motion under 11 U.S.C. § 707(b) and a Complaint Objecting to Discharge under 11 U.S.C. § 727. An order was entering granting the U.S. Trustee's Motion to Extend Time to May 11, 2004, but the U.S. Trustee did not file a motion to dismiss this case or a complaint objecting to the Debtor's discharge. The Chapter 7 Trustee filed a Trustee's Objection to Claim of Exemption on May 11, 2004, and a Motion to Compel Debtor to Turnover Property of the Estate on May 27, 2004. On November 4, 2004, an order was entered overruling the Trustee's Objection to Debtor's Claim of Exemption as moot. On November 17, 2004

a Motion and Notice of Compromise of Controversy was filed by the Chapter 7 Trustee with regard to the Motion to Compel Turnover of Property, setting forth a settlement of this matter between the Debtor and the Chapter 7 Trustee for payment by the Debtor of the amount of $2,000. In the Trustee's Motion to Compromise Controversy, counsel for the Chapter 7 Trustee stated:

...The non-exempt assets of the estate included $3,195.00 f [sic] personal property and a 1994 Lexus, 1990 Ford F250 pickup, 1998 utility trailer and a 1995 Cape Horn 27′ boat. The Debtor claims that purportedly there is a lien on all the non-exempt assets...

...The Trustee believes it is in the best interest of the estate to accept the $2,000.00 as settlement. With the costs of litigation and time spent and there is no guarantee that we would prevail in the matter...

On February 1, 2005, an order was entered granting the trustee's motion to compromise.

On February 2, 2005, in anticipation of Judge Baynes' retirement, the Debtor's general case and related adversary proceedings were reassigned to the Honorable Paul M. Glenn.

### Defendant's Motion for Summary Judgment

The Defendant has filed a motion for summary judgment on the five counts of the amended complaint, 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(19), 727(a)(4)(A) and 727(a)(4)(D).

### Count I—11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code provides that an individual debtor is not discharged from a debt...

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud ....

■ To prevail under this section the Plaintiff must establish that (1) the Debtor knowingly or recklessly made a material misrepresentation; (2) with intent to deceive the Plaintiff; and (3) the Plaintiff justifiably relied on the misrepresentation; (4) which resulted in a loss to the Plaintiff. *HSSM # 7 Limited Partnership v. Bilzerian (In re Bilzerian),* 100 F.3d 886, 892 (11th Cir.1996). Securities broker-dealers have been held liable for significant losses of their clients under the circumstances where fraudulent misrepresentation on the part of the broker led to the loss of money by their clients, under a theory that the brokers must only reap some benefit (i.e., a commission) from the money lost by the creditor. *See Bilzerian* at 890. In *Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), the Supreme Court made it clear, however, that once it has been established that money has been obtained by fraudulent conduct as set forth in § 523(a)(2)(A), "any debt" (which would include a loss in a brokerage account) arising therefrom is excepted from discharge.

■ Often, before a client of a securities broker files an adversary proceeding against the debtor/broker to except his debt from the debtor's discharge, an NASD award has been filed in the client's favor. An arbitration panel may have determined liability on the part of a securities broker for securities fraud under federal or state law, but such finding does not necessarily equate with a determination that such debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). *See In re Goldbronn,* 263 B.R. 347, 362 (Bankr. M.D.Fla.2001). *Cf. In re Beckemeyer,* 222 B.R. 318 (Bankr.W.D.Tenn.1998).

### Count II—11 U.S.C. § 523(a)(4)

■ Section 523(a)(4) of the Bankruptcy Code provides an exception to a

debtor's discharge for a debt "for fraud or defalcation while acting in a fiduciary capacity..." Although in many circumstances the term "fiduciary relationship" has been considered to be a special relationship of confidence, trust, and good faith, this generalization is too broad for purposes of § 523(a)(4). The scope of this relationship pursuant to § 523(a)(4) includes only those fiduciary relationships arising from express or technical trusts, and in some cases, statutorily-created trusts. *In re Jones,* 306 B.R. 352, 355 (Bankr.N.D.Ala.2004). Also, the fiduciary obligations imposed on the relationship must have existed prior to the act that created the debt, for the debt to fall within this exception. *Id., citing Quaif v. Johnson,* 4 F.3d 950, 953 (11th Cir.1993).

 Florida law is clear that a securities broker owes a fiduciary duty of care and loyalty to an investor. *First Union Brokerage v. Milos,* 717 F.Supp. 1519, 1526 (S.D.Fla.1989), *citing Gochnauer v. A.G. Edwards & Sons, Inc.,* 810 F.2d 1042, 1049 (11th Cir.1987). However, a general fiduciary duty arising out of a relationship does not create a technical trust. *In re Woods,* 284 B.R. 282, 288 (D.Colo.2001). The possible common law action for breach of fiduciary duty does not translate to an actionable breach of an express or technical trust relationship for purposes of § 523(a)(4).

### Count III—11 U.S.C. § 523(a)(19)

Section 523(a)(19) of the Bankruptcy Code is a relatively new provision that excepts certain debts from discharge. As first enacted as a part of The Corporate and Criminal Fraud Accountability Act of 2002 (commonly known as the "Sarbanes–Oxley Act"), the statute provided as follows:

**11 USC § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

.　　.　　.　　.　　.

(19) that—

(A) is for—

(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

 Obviously, Congress intended to design a broad provision to except from bankruptcy discharge all securities fraud and other securities violations by "wrongdoers." The legislative history contains the statement:

Current bankruptcy law permits wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This loophole in the law should be closed to help defrauded investors recoup their losses and to hold

accountable those who incur debts by violating our securities laws.

S. Rep. 107–146, *16 (2002).

In *In re Weilein*, 319 B.R. 175, 180 (Bankr.N.D.Iowa, 2004), Chief Judge Kilburg held that a debtor's obligation for securities fraud claims that were pending against him in a state court action on the date his bankruptcy petition was filed were not excepted from discharge pursuant to § 523(a)(19) because the claims had not been reduced to a "judgment, order or settlement agreement" prior to the debtor's bankruptcy filing.

However, § 523(a)(19) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Act") to add the words "before, on or after the date on which the petition was filed," between the words "results" and "from" in subsection (B). Also, pursuant to the Act, this amendment was effective beginning July 30, 2002 (the enactment of the Sarbanes–Oxley Act). *See* S. 256, 109th Cong. § 1404 (2005). Therefore, § 523(a)(19) of the Bankruptcy Code, as applicable to the Debtor's case, currently provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(19) that—

(A) is for—

(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, *before, on, or after the date on which the petition was filed,* from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

(Emphasis added.)

Upon a motion for reconsideration filed by the creditor in the *In re Weilein* case cited above, Chief Judge Kilburg held that the effect of the statutory amendment is for securities fraud issues raised in the state court action "to be excepted from discharge under § 523(a)(19) and remain viable in the state court action." *In re Weilein*, 328 B.R. 553 (Bankr.N.D.Iowa, 2005).

### Count IV—11 U.S.C. § 727(a)(4)(A)

 Section 727(a)(4)(A) of the Bankruptcy Code provides that "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account. . ." The purpose of 11 U.S.C. § 727(a)(4)(A) is to insure that sufficient facts are available to all persons interested in the administration of the bankruptcy estate without requiring investigations or examinations to discover whether the information provided is true. " 'The entire thrust of an objection to discharge because of a false oath or account is to prevent knowing fraud or perjury in the bankruptcy case. As a result, the objection should not apply to minor errors . . .' 'A false statement or omission that has no impact on a bankruptcy case is

not grounds for denial of a discharge under 727(a)(4)(A).' " *In re Wills*, 243 B.R. 58, 63 (9th Cir. BAP 1999), *citing* William L. Norton, Jr., NORTON BANKRUPTCY LAW AND PRACTICE 2D § 74.11 (1997) and 6 Lawrence P. King et al., COLLIER ON BANKRUPTCY ¶ 727.04[1][b] (15th ed. Rev.1998).

 There are two elements that must be proven in order to deny the debtor a discharge under § 727(a)(4)(A): first, the debtor's oath or account must have been knowingly and fraudulently made, and second, it must be related to a material fact. *In re Ingersoll*, 124 B.R. 116, 122 (M.D.Fla.1991). Of course, the fraudulent intent in such a case may be inferred from the totality of the circumstances surrounding the debtor's case. *Id.*

 There is a difference between a debtor who is trying to hide assets with a false oath or material omissions in his Statement of Financial Affairs, and a debtor who, through inadvertence, mistake, or ignorance of the issue of materiality in his disclosures, may omit certain assets in his original Statement of Financial Affairs. *See Turner v. Moeritz (In re Moeritz)*, 317 B.R. 177 (Bankr.M.D.Fla.2004) and *Turner v. Hosmer (In re Hosmer)*, 2004 WL 1964509 (Bankr.M.D.Fla.). In discerning whether the debtor has the requisite fraudulent intent to justify the denial of his discharge pursuant to § 727(a)(4)(A), the Court should analyze the omissions or nondisclosures as to whether they were part of a scheme on the part of the debtor to retain assets for his own benefit at the expense of his creditors.

### Count V—11 U.S.C. § 727(a)(4)(D)

Section 727(a)(4)(D) provides that the Court shall grant the Debtor a discharge unless the debtor knowingly and fraudulently, in or in connection with the case, withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs. This section is often included with other offenses under section 727, as the debtor may be refusing to turn over documents to the trustee in connection with a concealment, false oath, fraudulent transfer of assets, or other ground for discharge denial.

### The Summary Judgment Standard

 In Defendant's Motion for Summary Judgment, the Defendant is seeking the determination that, with regard to the five counts of the amended complaint, there is no genuine issue as to any material fact and that the Debtor is entitled to judgment as a matter of law.

Bankruptcy Rule 7056 is applicable to this determination:

(c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

The First Circuit Court of Appeals discussed the summary judgment standard in the case *Mulvihill v. Top–Flite Golf Company*, 335 F.3d 15, 19 (1st Cir.2003):

The role of summary judgment is to look behind the façade erected by the pleadings and assay the parties' proof in order to determine whether a trial will serve any useful purpose.... Conventional summary judgment practice requires the moving party to assert the absence of a genuine issue of material fact and then support that assertion by affidavits, admissions, or other materials of evidentiary quality.... Once the movant has done its part, the burden shifts

to the summary judgment target to demonstrate that a trialworthy issue exists...

In conducting this tamisage, the district court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor....This standard is notoriously liberal—but its liberality does not relieve the nonmovant of the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe...Moreover, the factual conflicts relied upon by the nonmovant must be both genuine and material...*(Citations omitted.)*

As the party moving for summary judgment, the Defendant has the burden of demonstrating that there is no genuine issue as to any material fact. If there is a genuine dispute over a material fact, summary judgment may not be granted. As a Court makes this determination, the nonmoving party is to be given the benefit of the doubt on all credibility issues and the benefit of any inferences that reasonably might be inferred from the evidence. *In re Diagnostic Instrument Group, Inc.*, 283 B.R. 87, 94 (Bankr.M.D.Fla.2002), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, if the facts and law still do not present "sufficient disagreement" to require a trial, but rather are "so one-sided that one party must prevail as a matter of law," summary judgment must be granted. *Id.*

■■■ When faced with an opponent's motion for summary judgment, a non-moving party may not rest on its pleadings, but must bring forth specific facts in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the case of the denial of a discharge of a Chapter 7 debtor pursuant to one of the exceptions of 11 U.S.C. § 727(a), this principle would appear to be especially true. "Section 727 of the Bankruptcy Code provides that the court shall grant a discharge unless the debtor has engaged in specifically enumerated actions that warrant the denial of the discharge. The statute is to be construed liberally in favor of the debtor and strictly against the objector.'" *In re Leffingwell*, 279 B.R. 328, 338 (Bankr. M.D.Fla.2002), *citing Second National Bank v. Parker (In re Parker)*, 85 B.R. 384, 387 (Bankr.E.D.Va.1988). This policy is also true for an action excepting a debt from discharge pursuant to § 523(a) of the Bankruptcy Code. *See In re St. Laurent*, 991 F.2d 672, 680 (11th Cir.1993). The Court looks to the non-movant not to merely rest on the allegations of the complaint and rehash immaterial aspects of the conflict between the plaintiffs and defendant in the response to the summary judgment motion, but to support the pleadings with specific facts.

**Application of the Summary Judgment Standard to this Proceeding**

In this case, the Court examines the issues in light of the Plaintiffs' allegations in the five counts of the amended complaint and the record for summary judgment.

**Count I**

■■■ With regard to Count I, an action pursuant to 11 U.S.C. § 523(a)(2)(A), the Plaintiffs have prevailed against the Debtor in an NASD arbitration hearing. Page 3 of the NASD Award, Arbitration No. 02–02224, contains the following statement:

Respondents Allapree and Dupree are jointly and severally liable for violation of the Florida Securities and Investors Protection Act, Fla. Stat. 517.301, breach of fiduciary duty, fraudulent inducement, negligence and negligent su-

pervision and shall pay to Claimants compensatory damages in the amount of $50,000.

Section 517.301 of the Florida Securities and Investors Protection Act provides, in part, that:

(1) It is unlawful and a violation of the provisions of this chapter for a person:

(a) In connection with the rendering of any investment advice or in connection with the offer, sale or purchase of any investment or security...directly or indirectly:

1. To employ any device, scheme, or artifice to defraud;

2. To obtain money or property by means of any untrue statement of a material fact or omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

Although the statements in the Arbitration Award do not establish the elements necessary to except the debt from discharge pursuant to § 523(a)(2)(A), there are genuine issues of material fact with regard to the representations or omissions made by the Debtor in connection with the investment by the Plaintiffs. The Debtor's motion for summary judgment as to Count I should be denied.

**Count II**

With regard to Count II, "Fraud or Defalcation While Acting in a Fiduciary Capacity," the Plaintiff has not alleged embezzlement or larceny, the other two exceptions from discharge pursuant to 11 U.S.C. § 523(a)(4). As to "fraud or defalcation while acting in a fiduciary capacity," federal courts have consistently held that

an express or technical trust must exist to satisfy the fiduciary requirement of § 523(a)(4). *Freeman v. Frick (In re Frick)*, 207 B.R. 731, 734 (Bankr.N.D.Fla. 1997). In some cases, a "statutorily-created" trust would also satisfy the fiduciary requirement of § 523(a)(4). *Quaif v. Johnson*, 4 F.3d 950, 953–4 (11th Cir.1993). Although the Debtor owed fiduciary duties to his client under Florida common law, these duties are not established by an express or technical trust. Additionally, there is no allegation of a statutorily-created trust. Therefore, as a matter of law, the facts established by the pleadings in connection with Count II of the amended complaint are not sufficient to give rise to an action pursuant to 11 U.S.C. § 523(a)(4). It is appropriate to grant the Defendant's Motion for Summary Judgment with regard to Count II of the amended complaint.

**Count III**

With regard to Count III of the amended complaint, 11 U.S.C. § 523(a)(19) allows a securities claim to be prosecuted through final judgment, order or settlement agreement despite the filing of bankruptcy, and provides that such claim (or arbitration award) would be nondischargeable. *In re Weilein*, 328 B.R. 553 (Bankr.N.D.Iowa, 2005). Accordingly, in this case, although an order had not been entered by the State Court confirming the arbitration award, the Debtor's motion for summary judgment as to Count III should be denied.

**Counts IV and V**

The Debtor's disclosures for "Paragraph 10. Other Transfers" on his original Statement of Financial Affairs set forth only the following: "PROPERTY SOLD 2 Skiff Boats 4/03, Single Family Home 9/03." As pointed out at the Debt-

or's continued Section 341 meeting, this was not a proper form; the Debtor was requested to "file an appropriate form and restore that to the proper format as a proved [sic] by the court and insert the proper information." (Transcript of Meeting with Jeffrey M. Dupree, February 2, 2004 & March 12, 2004, Page 89, lines 2 to 4, (referred to herein as Transcript).) The Debtor then amended his Statement of Financial Affairs, supplementing some of his previous responses in the original Statement of Financial Affairs. In his affidavit in support of his Motion for Summary Judgment, the Debtor stated that he signed the Amended Statement of Financial Affairs on March 18, 2004 (six days following the conclusion of his Section 341 meeting) without any knowledge that the Plaintiffs intended to file the adversary proceeding (Paragraph 7). This adversary proceeding was filed on March 16, 2004.

The Plaintiffs' original complaint set forth the following items that he alleges the Debtor "failed to disclose and/or concealed" in his petition, schedules and Statement of Financial Affairs:

(a) the sale of real property in North Carolina;

(b) interest in a 1984 Ford F150 and various trailers;

(c) his bank accounts which were closed within one year of the date of filing the bankruptcy petition;

(d) 1982 Boston Whaler;

(e) 1999 Express 16' aluminum boat;

(f) interests in various corporations and/or other business; and

(g) other issues expected to be found or confirmed during discovery.

With regard to the sale of real property in North Carolina, this was the "single family home 9/03" transfer noted in the original Statement of Financial Affairs that was detailed in the Amended State-ment. The Debtor testified about the sale of this property at the Section 341 Meeting. (Transcript, pages 10–11, lines 24–25 and 1–11.)

The next item listed was "interest in a 1984 Ford F150 and various trailers." The Debtor testified that the Ford 150 was abandoned in Georgia, and, at the time of the Section 341 meeting, had been sitting there "Probably a year. Nine months to a year." (Transcript, page 32, line 3.) The Debtor described it as "an '84, . . . old rusted out truck that won't run." (Transcript, page 17, lines 8–9.) Attached as exhibits to the Plaintiffs' Reply to the Defendant's Motion for Summary Judgment were copies of title registration information for the 1984 pick-up truck as well as various boats (two) and trailers (four) apparently registered to the Debtor. This information was obtained from the Hillsborough County Tax Collector's Office and contains the following disclaimer: "This information is provided as a courtesy of the Hillsborough County Tax Collector, which is not responsible for any errors or omissions. The official records are maintained by the Florida Department of Highway Safety and Motor Vehicles." All of registrations expired on April 26, 2004. The two boats and two of the four trailers were disclosed by the Debtor as having been sold in April, 2003. In the Amended Statement of Financial Affairs the Debtor detailed the sale of a 15' Boston Whaler and trailer and a 16' aluminum boat and trailer to unrelated parties as a supplement to his itemization of "2 skiff boats" in Paragraph 10 of his original Statement of Financial Affairs. In addition, the Debtor testified at his Section 341 meeting that he sold both boats with trailers. (Transcript, page 35, line 19.) In response to the Chapter 7 Trustee's question at the Section 341 meeting, "And how many trailers do you have now?" the Debtor answered, "I have one utility trailer and one trailer that goes with the boat I cur-

rently own, the Cape Horn." (Transcript, page 35, lines 21–24.) Of the four trailer registrations attached to the Plaintiffs' response, it appears that four trailers have been accounted for.

With regard to the next allegation of non-disclosure in the Complaint, "his bank accounts which were closed within one year of the date of filing the petition," the Debtor added the information to his Amended Statement of Financial Affairs that he closed a checking account for Allapree Advisers, Inc. in October, 2003 with a final balance of $15.76. There has been no further mention of bank accounts by the Plaintiffs since the filing of the Complaint.

The Complaint also noted that the Debtor failed to disclose "interests in various corporations and/or other businesses..." Again, in his Amended Statement of Financial Affairs the Debtor added "Home Inspections of the Suncoast, Inc." to Paragraph 18. The Plaintiffs attached this corporate information for Home Inspections of the Suncoast, Inc. as an exhibit to the response to summary judgment, but there have been no other allegations of failure to disclose corporate or business interests. It is obvious from the Debtor's testimony at the Section 341 meeting that there was some confusion about whether to disclose this corporation as he believed, "...it was just the beginning of the year that [it] was incorporated." (Transcript, page 82, lines 5–7.)

The Plaintiffs have not brought to the Court's attention any matter with reference to the last allegation in Counts IV and V of the amended complaint, "other issues expected to be found or confirmed during discovery."

At the close of the second session of the Section 341 meeting, on March 12, 2004, the representative from the Office of the U.S. Trustee asked whether the Debtor was going to amend his "schedules to ...

reflect some of these items that we've been talking about in these meeting that have not been included?" (Transcript, page 81, lines 12–15.) The Debtor filed an amendment to his Statement of Affairs and appeared to fully disclose transfers and other information as specifically discussed at the Section 341 meeting. *See Barnett Bank of Pasco County v. Decker (In re Decker)*, 105 B.R. 79, 83 (Bankr.M.D.Fla.1989). It does not appear that the Debtor was hiding assets. In fact, the Chapter 7 Trustee hired an appraiser to inventory the Debtor's assets and then compromised the controversy with the Debtor as to his non-exempt assets for a payment of $2,000.

The Debtor has disclosed the details of the transfers that were the basis of the original complaint in both his 341 meeting and on an amended Statement of Financial Affairs. There has been no specific allegation or issue of fact brought forth by the Plaintiffs with regard to Count V (§ 727(a)(4)(D)) that the Debtor has refused to turn over any documents to the Chapter 7 Trustee. In the Transcript of the Debtor's Section 341 meeting there is a discussion of the documents requested by the Chapter 7 Trustee to be provided before the continuation of the meeting (Page 57–58); at the continuation of the Section 341 meeting the Chapter 7 Trustee states that counsel for the Debtor has "provided me with...quite a number of documents." (Page 60, lines 15–17.) Other than Count V, as pled in the amended complaint, there has been no further discussion of this basis for denial of the Debtor's discharge.

## Conclusion

The Defendant's Motion for Summary Judgment should be granted as to Counts II, IV, and V of the amended complaint, and denied as to Counts I and III.

With regard to the issues raised pursuant to the exceptions from discharge pled

in the amended complaint, the Plaintiffs and the Debtor do not have the fiduciary relationship required for an action pursuant to § 523(a)(4).

As to the action pursuant to § 523(a)(2)(A), there are genuine issues with regard to misrepresentations or omissions of fact in connection with the sale of the variable annuities (in light of the NASD Award) which preclude granting the Debtor's motion for summary judgment on this count. Considering the provisions of § 523(a)(19), it is inappropriate to grant the Defendant's Motion for Summary Judgment as to Count III, since the Plaintiffs' NASD award may be pursued to judgment and may be excepted from the Debtor's bankruptcy discharge.

Although some of the disclosures by the Debtor on the original Statement of Financial Affairs appear minimal, the transcript of the Debtor's testimony at the Section 341 meeting(s) and Amended Statement of Financial Affairs show the Debtor has disclosed in detail various assets and transfers to the Chapter 7 Trustee—both assets contained in Plaintiffs' complaint and assets that were not brought up at the Section 341 meetings (such as the sale of a mutual fund and stock). With regard to the assets set forth in the Plaintiffs' complaint, all were disclosed in the Amended Statement of Financial Affairs or explained at the Section 341 meeting. Further, it does not appear that the Debtor has withheld any recorded information from an officer of the estate entitled to possession of such information. The Defendant's Motion for Summary Judgment should be granted as to Counts IV and V of the amended complaint.

Accordingly:

**IT IS ORDERED** that

1. The Defendant's Motion for Summary Judgment is granted in part, and denied in part.

2. The Motion for Summary Judgment with respect to Counts II, IV and V of the Amended Complaint to Determine Dischargeability of a Debt and Objection to Discharge and To Avoid Fraudulent Transfer and For Turnover is granted, and Counts II, IV and V of the amended complaint are dismissed.

3. The Defendant's Motion for Summary Judgment with respect to Counts I and III of the Amended Complaint to Determine Dischargeability of a Debt and Objection to Discharge and To Avoid Fraudulent Transfer and For Turnover is denied.